IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
Case No. XXXX

DANIELLE HELENA DOWNING,

    Plaintiff,

      v.

TOWN OF MOORESVILLE, MOORESVILLE POLICE DEPARTMENT, and JOSH BARLOW, Individually and Officially,

    Defendants.

**COMPLAINT**

Plaintiff, Danielle Helena Downing, by and through undersigned counsel, hereby files this Complaint, seeking damages and demanding a jury trial, and alleges the following:

## PARTIES

1. Plaintiff, Danielle Helena Downing ("Plaintiff"), is a citizen and resident of Charlotte, North Carolina.

2. Defendant Town of Mooresville ("Defendant Town"), is a municipal corporation organized by charter under Chapter 160A of the North Carolina General Statutes. It maintains and operates pursuant to its charter a police force called the Mooresville Police Department ("Defendant MPD"). Defendant Town bears legal responsibility for acts and omissions of MPD officers that occur pursuant to their authority as MPD officers and agents of Defendant Town. Upon information and belief, Defendant Town has purchased insurance that covers the negligence claim raised in this action and has thereby waived any defense of sovereign or governmental immunity to the extent it can claim such immunity under state law.

3. Defendant Mooresville Police Department ("Defendant MPD"), is a law enforcement agency that is maintained and operated by Defendant Town, pursuant to N.C. Gen. Stat. § 153A-149(c)(18). Defendant Town bears legal responsibility for acts and omissions of Defendant MPD officers that occur pursuant to their authority as officers and agents of Defendant Town.

4. Defendant Josh Barlow ("Defendant Barlow"), upon information and belief, is a citizen and resident of Iredell County, North Carolina. Defendant Barlow was a police officer with Defendant MPD at all times relevant to the allegations raised in this Complaint. He is sued in his official capacity for negligence and in his individual capacity for the violation of Plaintiff's Fourth Amendment rights, as well as for claims of assault and battery. Upon information and belief, because of Defendant Town's waiver of immunity, Defendant Barlow can be sued in his official capacity for negligence. Defendant Barlow's actions as described herein were malicious, intentional, and showed willful wanton and disregard for Plaintiff's rights, and therefore, pierce any potential claim to public officer immunity for the claims pled against him in his individual capacity.

## JURISDICTION AND VENUE

5. The Court has original jurisdiction over Plaintiff's Fourth Amendment claim, under 28 U.S.C. § 1331, and has supplemental jurisdiction over Plaintiff's claims of negligence, assault, and battery, under North Carolina law, by way of 28 U.S.C. § 1367, because these state law claims arise from the same case or controversy.

6. Venue is proper in the Western District of North Carolina, under 28 U.S.C. § 1391, as Defendant MPD is physically located and operating within this District, and all events alleged herein occurred in this District.

# FACTUAL ALLEGATIONS

7. On the early morning of April 25, 2018, Plaintiff was driving towards the intersection of Alcove Road and Williamson Road in Mooresville, North Carolina.

8. When Plaintiff arrived near a gas station at the address of 864 Williamson Road, Mooresville, North Carolina 28117, she was pulled over by Defendant Barlow.

9. Defendant Barlow exited his patrol car, and then approached the driver's side of Plaintiff's car. (The window on the driver's side of Plaintiff's car was lowered about a couple of inches at the time of the stop.) As soon as Defendant Barlow approached Plaintiff's car, he was noticeably agitated and impatient.

10. Defendant Barlow did not explain to Plaintiff why he had pulled her over. Instead, Defendant Barlow simply asked Plaintiff for her driver's license and vehicle registration card.

11. Complying with the request, Plaintiff handed her driver's license to Defendant Barlow first, as her license was within her immediate reach. Plaintiff explained to Defendant Barlow that she had accidentally misplaced her vehicle registration card, and with her hands remaining on the steering wheel, then began to scan her dashboard for it.

12. As Plaintiff searched for her registration, Defendant Barlow went back to his patrol car to scan Plaintiff's license. After a couple of minutes, Defendant Barlow returned to Plaintiff's car. Now, Defendant Barlow was even more agitated and impatient.

13. Plaintiff eventually found a pouch inside of an open compartment on the side of the driver's side door which contained her vehicle registration card. By this time, Defendant Barlow's display of impatience and agitation elevated to an apparent level of aggression—thereby causing Plaintiff, a Black woman who is approximately five feet tall and weighed less than 150 pounds at

3

the time of the traffic stop, to feel anxious. (Upon information and belief, Defendant Barlow is well over six feet tall and weighed approximately 250 pounds at the time of the traffic stop.)

14. Plaintiff nervously handed Defendant Barlow the pouch which contained her vehicle registration card. Defendant Barlow grabbed the pouch from Plaintiff, and then shoved the pouch back into the car, near Plaintiff's face. As the pouch reentered the car, Defendant Barlow, in an aggressive, loud, and abrupt tone of voice, ordered Plaintiff to take the vehicle registration card out of the pouch and hand him the card only.

15. In an effort to deescalate the situation, Plaintiff said to Defendant Barlow, "please give me one second, one second please."

16. But without allowing Plaintiff an opportunity to remove the vehicle registration card from the pouch, Defendant Barlow ordered Plaintiff to get out of the car.

17. Given that Defendant Barlow had not explained to Plaintiff why she was being pulled over, especially in the early morning hours, Plaintiff was startled by Defendant Barlow's order for her to get out of the car.

18. Within seconds after ordering Plaintiff to get out of her car, Defendant Barlow threatened to break the driver's side window if Plaintiff did not exit the vehicle fast enough. Specifically, Defendant Barlow told Plaintiff, "If you don't hurry up, I'm going to break your window."

19. Before Plaintiff had an opportunity to unlock her seatbelt and open the driver's side door, Defendant Barlow pounded the driver's side window with his billy club, causing glass to shatter around Plaintiff's body and face. (Several days after this traffic stop, Plaintiff even found pieces of glass embedded in her mouth.)

20. Seconds later, Defendant Barlow reached into Plaintiff's car, unlocked the driver's side door, unlocked the respective seatbelt, grabbed Plaintiff by her shoulders, dragged Plaintiff out of her car, and threw Plaintiff to the ground, on top of the pile of shattered glass that now laid inside and outside of Plaintiff's car. (Through Defendant Barlow's actions, Plaintiff received numerous lacerations and bruises on her body, and also suffered from a chipped tooth.)

21. As Plaintiff laid on the ground, Defendant Barlow handcuffed her, and several patrol cars with Defendant MPD appeared at the scene of the traffic stop.

22. At one point, another officer with Defendant MPD walked up to Plaintiff and said to her, "you know what you did." Other officers with Defendant MPD also searched Plaintiff's person and clothing as she laid on the ground.

23. Although multiple officers with Defendant MPD attempted to question Plaintiff, Plaintiff, who still had no idea why she was even stopped in the first place, exercised her right to remain silent.

24. Upon information and belief, the entire traffic stop was recorded by Defendant Barlow, through his police body camera.

25. Moments later, another officer with Defendant MPD transported Plaintiff to the hospital because her physical injuries were so severe.

26. After she was treated at the hospital, Plaintiff was placed into custody at Defendant MPD. Defendant MPD also had Plaintiff's vehicle towed away. (When Plaintiff was placed into custody, she was still not informed about the reason(s) why she had been pulled over.)

27. Later that same day, Defendant Barlow spoke with a magistrate. Upon information and belief, Defendant Barlow provided a false version of events to the magistrate regarding what

occurred during the traffic stop, and had Plaintiff charged with two misdemeanors: (a) Resisting a Public Officer, and (b) Assault on a Government Officer.

28. On or about April 27, 2018, Plaintiff submitted a written complaint to Defendant MPD about the events that occurred between her and Defendant Barlow.

29. After Defendant MPD received Plaintiff's complaint, a captain with Defendant MPD asked to speak with Plaintiff about the traffic stop initiated by Defendant Barlow. When the lieutenant met with Plaintiff, he asked Plaintiff "what is it going to take to get all of this to go away?"

30. On November 29, 2018, all of the charges against Plaintiff were dismissed.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
(Fourth Amendment)

31. The allegations contained in the previous paragraphs of this Complaint shall be fully incorporated and re-alleged as if fully set forth herein.

32. Plaintiff brings this claim pursuant to 42 U.S.C. § 1983, for the violation of her right to be free from unreasonable seizures and excessive force, as protected by the Fourth Amendment, which applies to the actions of state and local government officials pursuant to the Fourteenth Amendment. All actions complained of herein were taken under color of state law for purposes of § 1983.

33. Plaintiff brings claims of excessive force and unreasonable seizure under the Fourth Amendment against Defendant Barlow in his individual capacity for using excessive physical force against Plaintiff, and for arresting and detaining Plaintiff without probable cause.

34. Plaintiff seeks and is entitled to compensatory damages against Defendant Barlow for physical injuries and emotional distress she suffered as a result of Defendant Barlow's use of

excessive force against her, her loss of liberty, and the humiliation and emotional distress of being arrested and charged with two misdemeanors.

35. Plaintiff also seeks and is entitled to punitive damages against Defendant Barlow under Chapter 1D of the General Statutes because Defendant Barlow's use of excessive force, and his actions in arresting and detaining Plaintiff without probable cause were intentional, malicious, and showed willful and wanton disregard for Plaintiff's rights.

36. Furthermore, Plaintiff seeks and is entitled to attorney's fees under 42 U.S.C. § 1988.

## SECOND CAUSE OF ACTION
**(Negligence)**

37. The allegations contained in the previous paragraphs of this Complaint shall be fully incorporated and re-alleged as if fully set forth herein.

38. Defendant Barlow owed Plaintiff a duty of reasonable care to inform her of the reason(s) why she had been pulled over, as well as conduct the traffic stop without the use of excessive force.

39. Defendant Barlow breached that duty of reasonable care by failing to maintain his composure, even though Plaintiff remained compliant throughout the duration of the traffic stop.

40. Defendant Barlow's use of excessive force proximately caused Plaintiff's physical and emotional injuries described herein.

41. It was foreseeable that Defendant Barlow's use of excessive force would cause Plaintiff's physical and emotional injuries described herein, and therefore, Defendant Barlow is liable for all damages proximately resulting from the application of excessive force against Plaintiff.

42. Plaintiff seeks and is entitled to actual and compensatory damages, jointly and severally, against Defendant Town and Defendant Barlow.

43. Defendant Town has waived immunity from this negligence claim as to Defendant Barlow.

## THIRD CAUSE OF ACTION
### (Assault and Battery)

44. The allegations contained in the previous paragraphs of this Complaint shall be fully incorporated and re-alleged as if fully set forth herein.

45. Defendant Barlow's impatient behavior, aggressive language, and use of excessive force during the traffic stop (all without justification) demonstrate that he intended to harm Plaintiff physically.

46. Based upon Defendant Barlow's impatient behavior, aggressive language, and use of excessive force during the traffic stop, Plaintiff had a reasonable apprehension of imminent threat of physical injury.

47. The words and actions employed by Defendant Barlow during the traffic stop also demonstrate that (a) he intended to injure Plaintiff physically, (b) that he made harmful contact against Plaintiff, (c) that his harmful contact against Plaintiff not only caused physical injuries to her person, but also to her vehicle, and (d) Plaintiff did not consent to such harmful contact imposed by Defendant Barlow.

48. Plaintiff seeks and is entitled to compensatory damages against Defendant Barlow for physical injuries and emotional distress she suffered as a result of Defendant Barlow's use of excessive force against her, her loss of liberty, and the humiliation and emotional distress of being arrested and charged with two misdemeanors.

49. Plaintiff also seeks and is entitled to punitive damages against Defendant Barlow under Chapter 1D of the General Statutes because Defendant Barlow's use of excessive force, by way of threats and physical harm, were intentional, malicious, and showed willful and wanton disregard for Plaintiff's rights.

## JURY DEMAND

Plaintiff demands that all matters not suitable for determination by the Court be decided by a jury of her peers.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests:

1. An award of actual and compensatory damages against Defendant Town, Defendant MPD, and Defendant Barlow, jointly and severally;

2. An award of punitive damages against Defendant Barlow, individually;

3. Interest on the Judgment at the state statutory rate;

4. The costs and expenses in this action as allowed by statute, including reasonable attorney's fees from Defendant under 42 U.S.C. § 1988; and

5. Such other and further relief as the Court deems just and necessary.

Date: April 2, 2021

Respectfully submitted,

**/s/ Cheyenne N. Chambers**
Cheyenne N. Chambers (N.C. Bar #48699)
TIN, FULTON, WALKER & OWEN, PLLC
301 East Park Avenue
Charlotte, NC 28203
Tel.: (704) 338-1220
Fax: (704) 338-1312
E-mail: cchambers@tinfulton.com

*Counsel for Plaintiff Danielle Helena Downing*